IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLIE MAE WILLETT,           )
                               )
          Plaintiff,           )
                               )
                               )  CASE NO. 2:12-CV-296-WKW
     v.                        )         [WO]
                               )
UNITED STATES OF AMERICA,      )
                               )
          Defendant.           )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Charlie Mae Willett brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–80, alleging a premises liability theory of negligence that the United States breached its duty of care to protect her from a sexual assault while she was hospitalized and sedated at the Central Alabama Veterans Health Care System ("CAVHCS") facility in Montgomery, Alabama. Pending is the United States's renewed motion to dismiss Ms. Willett's Second Amended Complaint on the basis that Ms. Willett's FTCA claim falls within the discretionary-function exception to the FTCA's waiver of the United States's sovereign immunity.  (Docs. # 41, 42.)  The United States's motion is based upon a lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Ms. Willett filed a response in opposition to the motion, invoking Federal Rule of Civil Procedure 12(b)(6) as the standard of review.  (Doc. # 48.)  In its reply,

the United States raises the issue whether the jurisdictional inquiry reaches the merits and contends that, if so, Federal Rule of Civil Procedure 56 should govern.  (Doc. # 51.)  After careful consideration of the arguments of counsel and the relevant law, the court finds that the United States's motion invokes both Rule 12(b)(1) and (b)(6) review and that the motion is due to be granted.

## I.  JURISDICTION AND VENUE

The parties do not contest personal jurisdiction or venue.  Subject-matter jurisdiction is in dispute.

## II.  BACKGROUND

### A.  <u>The Operative Complaint</u>

The operative complaint is the Second Amended Complaint, which alleges the following facts pertinent to the motion to dismiss.  On April 21 and 22, 2009, while Ms. Willett was hospitalized at CAVHCS's facility in Montgomery, Alabama, CAVHCS employee Marvin Chappell sexually assaulted her while she was "heavily medicated" and in an "anaesthetized state."  (2d Am. Compl. ¶¶ 12, 17 (Doc. # 23).)  Mr. Chappell also "sexually molested" other patients prior to Ms. Willett's assault, and CAVHCS's chief executive, Clifford Robinson, "clearly knew, or should have known, about Mr. Chappell's tendency to sexually modest [sic] innocent people."  (2d

Am. Compl. ¶¶ 5, 9.)  Additionally, the charge nurse, Patricia Henley, "refused to investigate" Ms. Willett's report of the sexual assault.  (2d Am. Compl. ¶¶ 5–6.)

Ms. Willett's FTCA action alleges that the United States is liable for negligence because the combination of her hospitalization and sedation created a special relationship between her and CAVHCS, from which a duty of care flowed. In Ms. Willett's words, this special relationship "[gave] rise to a duty to protect [her] from the criminal acts of third parties" while she was in CAVHCS's inpatient care. (2d Am. Compl. ¶ 17.)  She also alleges that CAVHCS "negligently failed to protect her" from a foreseeable sexual assault by Mr. Chappell.  (2d Am. Compl. ¶ 18.)  Ms. Willett seeks to hold the United States liable under the FTCA for the alleged negligent conduct of CAVHCS's employees.

## B.   **The Procedural History**

This action has been pending more than two years, and this is the third time it has been before the court on a motion to dismiss.  Initially, the United States filed a Rule 12(b)(1) motion to dismiss the Amended Complaint, which alleged a claim for negligent hiring and supervision.  A prior Order granted that motion and dismissed the claim as barred by the assault-and-battery exception to the FTCA's waiver of the United States's sovereign immunity, *see* 28 U.S.C. § 2680(h), but permitted Ms. Willett to replead a premises liability theory of negligence predicated upon breach of

a duty of protective care.[1]  (Doc. # 22.)  Ms. Willett pleaded a premises liability claim in the Second Amended Complaint, which then survived the United States's second Rule 12(b)(1) motion to dismiss based upon sovereign immunity.  The Order denying the motion rejected the United States's contention that the assault-and-battery exception to the waiver of sovereign immunity barred the premises liability claim. The Order found that the assault-and-battery exception did not apply because Ms. Willett had pleaded a special relationship under Alabama law that gave rise to a duty on the part of the United States to protect her from a foreseeable criminal assault and that this duty was independent of Mr. Chappell's government employment.  The Order delayed ruling, however, on the application of the discretionary-function exception to the FTCA's waiver of the United States's sovereign immunity in order to permit Ms. Willett to conduct limited jurisdictional discovery.  The right to discovery was granted *sua sponte*.  (*See* Doc. # 36.)

---

[1] Ms. Willett has not once moved to conduct jurisdictional discovery or even mentioned its prospect, notwithstanding the United States's vigorous and persistent contest to subject-matter jurisdiction from the beginning of this litigation.  The United States has suggested repeatedly that the court has acted as Ms. Willett's advocate in permitting Ms. Willett to amend her pleadings and conduct jurisdictional discovery.  (*See, e.g.*, Doc. # 42, at 3 (commenting that the court granted Ms. Willett "leave to amend her complaint and instructed her how to plead to avoid application of § 2680(h)").)  The United States may disagree with how the court conducts the business of the Third Branch, but would be reminded that allegations of abuse of sedated veterans by government employees deserve the highest scrutiny by a factually and institutionally disinterested judge.  This scrutiny preserves the separation of the branches and protects veterans who are hospitalized, sedated, and at the mercy of the Department of Veterans Affairs.

C.   **Jurisdictional Discovery**

The existence (or not) of regulations and internal CAVHCS policies that impose mandatory obligations on employees with respect to protection of patients from third-party sexual assaults is critical to the subject of this motion.  As discussed *infra* in Part III. A., mandatory directives, whether in a federal statute, regulation, or internal policy, are part of the discretionary-function exception analysis.  The prior Order also permitted the United States to renew its motion to dismiss after the close of jurisdictional discovery (Doc. # 36), which it did (Doc. # 41).

In her response to the renewed motion to dismiss, Ms. Willett contends that, during the discovery period, she uncovered "mandatory procedures" that "protect and prevent sexual assaults of patients."[2]  (Doc. # 48, at 4.)  She relies upon 38 C.F.R. § 1.218(b), titled "Security and law enforcement at VA facilities," as establishing a non-discretionary duty that requires CAVHCS officials to arrest and remove from the premises any individual who engages in prohibited sexual misconduct.  Alternatively, Ms. Willett asserts that, even if § 1.218(b) gives CAVHCS discretion in whether to arrest an offender and remove him or her from the premises, there are two CAVHCS memoranda that require employees to report and investigate known sexual assaults: (1) Memorandum No. 132-07-04, *Reporting Crimes, Traffic Accidents, Assaultive*

---

[2] Ms. Willett apparently did not pursue any discovery directly from the United States. (*See* Doc. # 41, at 4 n.1.)

5

*Behavior or Suspicious Activities* (Jan. 26, 2007) ("Reporting Policy"); and (2) Memorandum No. 11-06-30, *Patient Abuse* (June 15, 2006) ("Patient Abuse Policy"). The thrust of Ms. Willett's argument is that CAVHCS employees failed to report prior incidents of alleged sexual assaults on patients by Mr. Chappell, failed to investigate prior incidents of alleged sexual assaults on patients by Mr. Chappell, and failed to arrest or remove Mr. Chappell from the premises after he allegedly sexually assaulted patients on prior occasions.

The parties' briefing on the pending renewed motion to dismiss focuses on whether the discretionary-function exception to the FTCA applies. Additionally, as indicated at the beginning of this opinion, the standard of review has garnered some attention by the parties.

### III. DISCUSSION

To sort out this two-year-old action for the final time requires careful analysis of the Second Amended Complaint in light of the FTCA's jurisdictional requirements with respect to the discretionary-function exception, the appropriate standard of review, and the general rules governing pleading a cause of action.

**A.    The FTCA and Its Discretionary-Function Exception**

Under the FTCA, the United States has waived its sovereign immunity for injuries caused by the "negligent or wrongful act or omission" of a federal

government employee while that employee is "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  Several exceptions in 28 U.S.C. § 2680 limit the FTCA's waiver, and, where an exception applies, sovereign immunity remains a jurisdictional bar to suit.  The discretionary-function exception is one such exception.  *See* § 2680(a).

The Supreme Court has fashioned a two-step test for determining whether the discretionary-function exception applies to re-erect sovereign immunity as a bar to an FTCA negligence suit.  *See United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993).  The first step examines whether the nature of the government actor's conduct "involves an element of judgment or choice." *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997) (citation and internal quotations omitted).  "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to

follow, because the employee has no rightful option but to adhere to the directive.'"[3] *Id.* (quoting *Gaubert*, 499 U.S. at 322). On the other hand, "if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the discretionary function exception." *Powers v. United States*, 996 F.2d 1121, 1124 (11th Cir. 1993). If nothing expressly prescribes the conduct, the analysis moves to the second step.

The second step asks whether the judgment at issue "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (citation and internal quotation marks omitted). Even if the conduct involves an element of judgment, the discretionary-function exception only applies to "decisions that are based on considerations of social, economic, and political

---

[3] The Eleventh Circuit has explained how an agency's regulations or guidelines on matters of discretion fit within the discretionary-function test:

> Where Congress has granted an agency discretion in implementing a regulatory statute, the agency's promulgation of regulations or guidelines describing how it will use that discretion is protected by the discretionary function exception. Furthermore, if the regulation or guideline mandates particular conduct, and the [agency's] employee obeys the direction, the Government will be protected [by the discretionary function exception] because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation [or guideline.] On the other hand, if the employee violates the mandatory regulation [or guideline], there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.

*Cohen v. United States*, 151 F.3d 1338, 1344–45 (11th Cir. 1998) (internal quotation marks and citations omitted).

policy." *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988).  The exception exists "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy."[4]  *Gaubert*, 499 U.S. at 323 (citation and internal quotation marks omitted).

## B.  Standard of Review

It is important to resolve at the outset what standard of review governs the United States's motion to dismiss.  There are four potential standards in play:  Rule 12(b)(1) facial attack; Rule 12(b)(1) factual attack; Rule 56; and Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, and Rule 12(b)(1) permits a facial or factual  attack.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).  A Rule 12(b)(1)

---

[4] It also is useful to set out what is not at issue in the discretionary-function analysis.  As the Eleventh Circuit has emphasized, "[The court's] concern under the discretionary function exception is not whether the allegations of negligence are true."  *Hughes v. United States*, 110 F.3d 765, 767 n.1 (11th Cir. 1997).  "[I]nstead, [the court's] concern is whether the nature of the conduct involves judgment or choice and whether that judgment is of the kind that the exception was designed to protect."  *Id.*; *see also Autery*, 992 F.2d at 1528 (criticizing the district court's analysis because it "appear[ed] to [have] collapse[d] the question of whether the Park Service was negligent into the discretionary function inquiry").

factual attack, however, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

There is an exception to the application of the standards governing dismissal for lack of subject-matter jurisdiction "when the basis of jurisdiction is also an element in the plaintiff's federal cause of action." *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981)[5]; *see also Lawrence*, 919 F.2d at 1529. The Eleventh Circuit "ha[s] cautioned . . . that the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citation, alterations, and internal quotation marks omitted). When the jurisdictional

---

[5] *In Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

and merits inquiries are intertwined, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson*, 645 F.2d at 415. "This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (summary judgment) – both of which place great restrictions on the district court's discretion." *Id.*

For the reasons that follow, the United States's motion will be treated in part as a Rule 12(b)(6) challenge where the jurisdictional facts are intertwined with the merits and in part as a Rule 12(b)(1) facial challenge to jurisdiction. The issue of foreseeability – whether the United States knew or should have known of prior sexual assaults on patients allegedly committed by Mr. Chappell – is intertwined with the merits, but the issue of whether any CAVHCS employee violated a mandatory regulation or policy is solely a jurisdictional issue. The latter issue will be reviewed as a Rule 12(b)(1) facial attack, and the former as a Rule 12(b)(6) challenge. These two issues are dispositive and resolve in favor of the United States.[6]

---

[6] Review will be limited to the allegations in the Second Amended Complaint and will not include the evidence submitted by the United States. The United States submits the report of the Department of Veterans Affairs' Administrative Investigation Board ("Board"), dated July 24, 2009. Pursuant to the CAVHCS director's June 1, 2009 directive, the Board conducted an internal investigation of Ms. Willett's allegations that, during her inpatient hospitalization from

## 1.    *Standard for Reviewing Foreseeability (Merits)*

The United States contends that Ms. Willett cannot overcome the applicability of the discretionary-function exception because it "has absolutely no knowledge of any prior assault by [Mr.] Chappell and . . . [Ms. Willett] lacks any evidentiary support for this baseless factual contention." (Doc. # 51, at 6 (citing Fed. R. Civ. P. 11(b)(3).) The United States argues that its challenge presents a Rule 12(b)(1) factual attack. Alternatively, it contends that, if the issue of CAVHCS's knowledge of prior sexual assaults is intertwined with the merits, then Rule 56's standard should be applied. The United States's briefing raises the issue (without answering it) of whether CAVHCS's knowledge of Mr. Chappell's alleged prior sexual assaults on patients is a fact that is intertwined with the merits. (Doc. # 51, at 6.)

The answer is that there is overlap in the jurisdictional and merits inquiries. First, on the merits, whether CAVHCS knew or should have known of Mr. Chappell's prior sexual assaults on patients bears on the foreseeability of Mr. Chappell's subsequent sexual assaults on Ms. Willett, which is a key merits issue under the

---

April 11, 2009, to May 1, 2009, Mr. Chappell sexually assaulted her at CAVHCS's Montgomery facility.  As part of its investigation, the Board interviewed Ms. Willett on June 8, 2009.  The Board concluded, however,  that "[t]he evidence d[id] not support that Mr. Chappell sexually harassed [Ms.] Willett when she was an inpatient on 3A" and detailed the reasons for its conclusion.  (Board's Report of Investigation (Doc. # 51-1).)  The United States also provides the manufacturer's information for the drug, Lortab, and medical records (*i.e.*, "Progress Notes") from Ms. Willett's hospital stay.  The United States has not demonstrated how these documents bear on whether the United States knew or should have known of prior incidents of sexual assaults on patients allegedly committed by Mr. Chappell or on whether CAVHCS's employees violated mandatory directives pertaining to reporting and investigative requirements.

applicable negligence law.  Ms. Willett's claim alleging a negligent failure of the United States to protect her from the sexual assault by Mr. Chappell is governed by Alabama law because the alleged acts of negligence occurred in Alabama.[7]  As the court previously explained (Doc. # 22, at 8–9), Alabama law provides that there are circumstances when a defendant has a duty to protect a plaintiff by virtue of a special relationship between the plaintiff and the defendant.  *See Young v. Huntsville Hosp.*, 595 So. 2d 1386, 1388 (Ala. 1992) (finding the existence of a special relationship between the patient and the hospital based upon evidence that the plaintiff "was anesthetized or sedated and therefore unable, or less able, to protect herself from" the sexual assault).  The defendant has a duty to protect a plaintiff on the basis of the special relationship "when the defendant knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff."[8]  *Broadus v. Chevron USA, Inc.*, 677 So. 2d 199, 202 (Ala. 1989); *see also Young*, 595 So. 2d at 1388 (discussing foreseeability as an element of the plaintiff's negligence claim and finding that evidence that the perpetrator "was a trespasser after warning" created a jury issue); (*see also* Doc. # 36, at 7 (explaining that "foreseeability of the criminal acts is a necessary element for proving liability under *Young*").)

---

[7] The "law of the place where the act . . . occurred," § 1346(b), is the "source of substantive liability under the FTCA."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994).

[8] For convenience, in the balance of the opinion, the court's use of "knew" or "knowledge" is shorthand for "knew or had reason to know/should have known."

Second, the issue of whether CAVHCS knew or should have known of Mr. Chappell's alleged prior sexual assaults on patients also is relevant to whether the discretionary-function exception applies. Ms. Willett contends that the United States failed to follow mandatory directives in response to past accusations that Mr. Chappell had sexually assaulted other patients. The answer to this inquiry bears on whether the nature of the conduct "involves an element of judgment or choice," *Ochran*, 117 F.3d at 499, the first step for resolving whether the discretionary-function exception applies. Accordingly, resolution of CAVHCS's knowledge of the alleged prior sexual assaults will assist in resolving the issue of subject-matter jurisdiction and an element of the FTCA claim. *See Perez v. United States*, No. 06cv80, 2010 WL 3927628, at *3 (D. Virgin Islands 2010) ("[T]he issue of the Government's knowledge of the risk of barracuda attacks is relevant both to the application of the discretionary function exception and the merits of Plaintiff's negligence claim.").

Based upon the foregoing principles, the United States's Rule 12(b)(1) motion for dismissal on the basis of the discretionary-function exception is intertwined with the merits of Ms. Willett's FTCA cause of action. The United States urges application of the Rule 56 standard under which some evidence of CAVHCS's knowledge of Mr. Chappell's alleged prior sexual assaults on patients would be

required of Ms. Willett.  Under that standard of review, Ms. Willett would lose because she has failed to submit any evidence that Mr. Chappell previously sexually assaulted a patient or that CAVHCS failed to investigate a known prior assault.  (*See* Doc. # 51, at 6); *see also* Fed. R. Civ. P. 56(c).  Ms. Willett, on the other hand, offers no insight on what standard of review applies, but recites the Rule 12(b)(6) standard without stating her basis for doing so.  Notwithstanding the age of this case, it is premature to examine the motion under Rule 56's standard because there is limited factual development of the record on the merits of the FTCA claim.  The Order permitting jurisdictional discovery specifically prohibited Ms. Willett from "conduct[ing] discovery on the merits of her claim."  (Doc. # 36, at 10.)  In short, there has been no discovery on the issue of foreseeability or knowledge.

For these reasons, Ms. Willett will be given the benefit of Rule 12(b)(6) review on the merits issue of foreseeability.  The analysis on the issue of CAVHCS's knowledge of prior sexual assaults allegedly committed by Mr. Chappell proceeds, therefore, under the standard of review governing Rule 12(b)(6) motions.  Scrutinizing the allegations of the Second Amended Complaint, rather than the evidence, is sensible because the foundation of any lawsuit is the complaint, and where the complaint fails to plead a plausible claim, the lawsuit should not be permitted to go forward.

### 2.    *Standard for Reviewing Violations of Mandatory Policies*

The analysis of the discretionary-function exception requires consideration of whether there is a violation of a federal regulation or policy that "specifically prescribes a course of action for an employee to follow." *Ochran*, 117 F.3d at 499 (quoting *Gaubert*, 499 U.S. at 322).   No party has argued that this inquiry is intertwined with the merits.  Rule 12(b)(1) will govern the analysis, and the focus will remain on the Second Amended Complaint's allegations such that the challenge will be considered a facial one (and not a factual one).

## C.   <u>Analysis</u>

The analysis begins with the Rule 12(b)(1) question of whether there are allegations establishing that CAVHCS's employees or officials violated mandatory regulations or policies.  The analysis then turns to the Rule 12(b)(6) question of whether there are allegations establishing that CAVHCS knew or should have known about prior sexual assaults on patients allegedly committed by Mr. Chappell.  In the end, Rule 12(b)(1) and Rule 12(b)(6) provide alternative bases for dismissal.

1.    *Discretionary-Function Exception (Violations of Mandatory Policies)*

Under Rule 12(b)(1), the issue is whether there are facts that overcome the discretionary-function exception to the FTCA's waiver of the United States's sovereign immunity.  As outlined below, the Second Amended Complaint suffers several deficiencies for purposes of overcoming the discretionary-function exception to the FTCA.

a.    **The Existence of a Mandatory Federal Regulation or Policy**

The first step of the *Gaubert* test requires consideration of whether the conduct at issue involves "an element of judgment or choice."  *Ochran*, 117 F.3d at 499.  Ms. Willett contends generally that there are "mandatory procedures in place to protect and prevent sexual assaults of patients."  (Doc. # 48, at 4.)  She relies specifically upon 38 C.F.R. § 1.218(b) as establishing a non-discretionary duty that requires CAVHCS officials to arrest and remove from the premises any individual who engages in prohibited sexual misconduct.[9]  Alternatively, Ms. Willett contends that

---

[9] Section 1.218 provides that "[t]he head of the facility is charged with the responsibility for the enforcement of these rules and regulations and shall cause these rules and regulations to be posted in a conspicuous place on the property."  § 1.218(a).  It encompasses fifteen categories of rules governing a variety of matters, including visiting hours, preservation of property, conformity with emergency conditions, disturbances, weapons, gambling, solicitation, and, pertinent to this case, sexual misconduct.  "[S]exual misconduct" is defined as "[a]ny act of sexual gratification on VA property involving two or more persons who do not reside in quarters on the property."  § 1.218(a)(16).  The regulation further provides that "[c]onduct in violation of the rules and regulations set forth in paragraph (a) of this section *subjects an offender* to arrest and removal from the premises."  § 1.218(b) (emphasis added).  Additionally, offenders who are guilty of violating the rules are subject to enumerated fines and potential imprisonment of not more than six months.  *Id.*  Finally, VA police officers are charged with enforcing the rules in accordance with the VA's policies and operating procedures.  § 1.218(c)(1).

even if § 1.218(b) gives a CAVHCS officer discretion in whether to arrest an offender and remove him or her from the premises, its discretion is restrained through two CAVHCS Memoranda:   (1) The Reporting Policy; and (2) the Patient Abuse Policy").[10]

The parties devote substantial arguments to whether the regulation and policies are mandatory.  All of the arguments have been considered, and some arguments are more persuasive than others.  For purposes of judicial expediency, however, the court will assume, without deciding, that § 1.218(b) mandates an arrest and removal of an offender who engages in sexual misconduct, that the Reporting Policy and the Patient Abuse Policy contain mandatory directives for reporting and investigating accusations of possible sexual assaults occurring on CAVHCS premises, and that

---

[10] The Reporting Policy and the Patient Abuse Policy require an employee who observes or obtains information about assaultive behavior or patient abuse to notify his or her supervisor or the Veterans Affairs police as soon as possible.  (Reporting Policy, at 1; Patient Abuse Policy, at 2.)  The Patient Abuse Policy also provides that, after an employee reports an incident, the Risk Manager "is responsible for reviewing all allegations of patient abuse and conducting a preliminary investigation to determine whether the allegation is credible."  (Patient Abuse Policy, at 2.)  The Reporting Policy delineates VA police officers' responsibilities when notified of a possible crime on CAVHCS property, and those responsibilities include the suspect's detention for preliminary investigation, or if necessary, the suspect's arrest.  (Reporting Policy, at 2–3 (requiring VA police to respond immediately to the scene, provide first aid to the victim, detain any suspects for a preliminary investigation, secure evidence, *etc.*).)  Ms. Willett argues that these policies required employees to report to their supervisors information about the prior accusations of patient sexual assaults by Mr. Chappell, mandated a response by the VA police, and required an investigation by a Risk Manager.  She contends that the responsible CAVHCS employees – whomever they may be – had no discretion not to report the sexual assaults to a superior and not to conduct any investigation at all.  (Doc. # 48, at 8.)

violations of these mandatory requirements provide "no shelter from liability because there is no room for choice."[11]  *Cohen*, 151 F.3d at 1344–45.

> ### b.      The Violation of a Mandatory Federal Regulation or Policy

Even with these assumptions, it is paramount that the Second Amended Complaint contain allegations demonstrating that a CAVHCS employee violated either § 1.218(b), the Reporting Policy, or the Patient Abuse Policy.  In other words, the existence of a mandatory regulation or policy is meaningless without facts that the policies actually were violated.  *See generally Cohen*, 151 F.3d at 1344–45 ("[I]f the regulation or guideline mandates particular conduct, and the [agency's] employee obeys the direction, the Government will be protected [by the discretionary function exception].").  Ms. Willett says that her Second Amended Complaint "properly and sufficiently alleges that CAVHCS was negligent in [its] failure to . . . report Mr. Chappell's previous sexual abuses" on patients and "investigate Mr. Chappell's

---

[11] Although this opinion makes no finding, there is some doubt whether § 1.218(b) contains mandatory directives for the arrest and removal of offenders.  The phrase that Ms. Willett hones in on – "subjects an offender to arrest and removal" – does not contain mandatory directives such as "must" or "shall."  *Cf. Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995) ("[A] longstanding canon holds that the word 'shall' standing by itself is a word of command rather than guidance when the statutory purpose is the protection of public or private rights." (citing *Escoe v. Zerbst*, 295 U.S. 490, 494 (1934) (Cardozo, J.)).  Ms. Willett appears at one point to recognize the element of choice afforded to an officer when she says that a violation could have "possib[ly] subject[ed] Mr. Chappell] to arrest."  (Doc. # 48, at 11.)  It is important to note also that, contrary to Ms. Willett's argument, nothing in these regulations requires permanent removal from the premises, as Ms. Willett alleges.  There is a better case for arguing that the Reporting Policy and Patient Abuse Policy contain mandatory directives.

previous abuse of veterans at CAVHCS." (Doc. # 48, at 9.) But if those allegations exist, they are invisible.

There are no allegations in the Second Amended Complaint that a CAVHCS employee failed to report to a supervisor any alleged prior sexual assaults on patients committed by Mr. Chappell or that the CAVHCS Risk Manager failed to perform an investigation of a reported patient sexual assault by Mr. Chappell. There also are no allegations indicating that any Veterans Affairs police officer knew or should have known about Mr. Chappell's alleged prior sexual assaults on patients, but failed to arrest Mr. Chappell and remove him from the premises. There simply are no facts alleged from which to discern whether CAVHCS employees or officers complied or not with § 1.218(b) and the policies governing reporting and investigative procedures with respect to the prior patient sexual assaults allegedly committed by Mr. Chappell.[12]

_____

[12] The court pauses to note two arguments – one by Ms. Willett and one by the United States – that have been considered but rejected. First, the fact that the Second Amended Complaint pleads that CAVHCS employees refused to investigate Ms. Willett's allegations that Mr. Chappell had sexually assaulted her is not the proper focus at this stage because Ms. Willett argues that the harm she suffered by Mr. Chappell is the result of CAVHCS's failure to follow mandatory directives as to Mr. Chappell's *prior* incidents of sexual abuse of patients.

Second, the United States argues that "there is an insufficient causal link between the alleged [regulatory] violations . . . and the subsequent assault on [Ms. Willett] to defeat the discretionary function exception." (Doc. # 52, at 14–15.) It contends that the causal link is missing because CAVHCS "was not required to fire [Mr.] Chappell or bar him from the hospital even if it had conducted an investigation." (Doc. # 51, at 16.) The court has considerable doubt whether Ms. Willett has alleged or can prove causation; however, the sole case upon which the United States relies does not hold, as the United States says it does, that "to defeat the discretionary function exception, the violation of a mandatory and specific federal statute,

###### c.    Ms. Willett's Pleading Burden

In consideration of the deficient allegations in the Second Amended Complaint, the issue turns to Ms. Willett's pleading burden with respect to the discretionary-function exception.  Neither party cites a decision that has addressed a plaintiff's pleading burden with respect to the discretionary-function exception when faced with a facial attack under Rule 12(b)(1).[13]  Other circuits, however, including the Fourth, Fifth, Sixth, and Tenth Circuits, even where undecided as to which party bears the ultimate burden of proof, place the burden squarely on the plaintiff at the motion-to-dismiss stage to "plead[ ] facts that facially allege matters outside of the discretionary function exception."  *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010); *see*

---

regulation or policy must be the cause of the harm to the plaintiff."  (Doc. # 51, at 15 (citing *Andrews v. United States*, 121 F.3d 1430 (11th Cir. 1997).)  *Andrews* held that the discretionary-function exception did *not* "apply to the Navy's violation of its mandatory duty not to place flammable liquid waste in the on-base dumpsters."  121 F.3d at 1441.  The Eleventh Circuit discussed the absence of evidence on causation in addressing the merits of the negligence claim.  *See id.*  Thus, *Andrews* is distinguishable.  It does not provide authority that supports incorporating into the analysis of the discretionary-function exception a requirement of proximate cause.  *See also In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995) (Issues of proximate cause "are irrelevant to the discretionary function inquiry.").  Absent any other authority from the United States, its position will not be adopted for purposes of the present analysis.

[13] The Eleventh Circuit has held that, "[i]n the face of a [Rule 12(b)(1)] factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."  *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).  *OSI* is not directly on point because the court is treating the United States's motion as a Rule 12(b)(1) facial challenge.  The Eleventh Circuit also has been confronted with, but has declined to decide, which party bears the *ultimate* burden of proving the applicability of the discretionary-function exception, but has commented that the Supreme Court in *Gaubert* "appeared to impose the burden on the tort plaintiff to show that the government's conduct is not protected under the discretionary function exception."  *Autery*, 992 F.2d at 1526 n.6 (citing *Gaubert*, 499 U.S. at 324–25).

*also St. Tammy Parish, ex rel. Davis v. Fed. Emergency Mgmt.* Agency, 556 F.3d 307, 315 n.3 (5th Cir. 2009) ("On this motion to dismiss, . . . the [plaintiff] must advance a claim that is facially outside the discretionary function exception in order to survive the motion to dismiss, regardless of which party bears the ultimate burden of proof."); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999) ("To avoid dismissal of an FTCA claim under the discretionary-function exception, a plaintiff must allege facts that place its claim facially outside the exception."); *Blakey v. U.S.S.* Iowa, 991 F.2d 148, 154 (4th Cir. 1993) ("The [plaintiffs'] only means for surviving a motion to dismiss are to 'allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.'" (quoting *Gaubert*, 499 U.S. at 324–25)); *Carlyle v. Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982) (Jurisdiction under the FTCA is invoked "only if the complaint is facially outside the exceptions [set forth in the FTCA].").

These out-of-circuit decisions that place the pleading burden on the plaintiff are persuasive, and that burden will be placed on Ms. Willett for purposes of resolving the Rule 12(b)(1) facial challenge.  As discussed above, Ms. Willett has not met her burden of pleading the inapplicability of the discretionary-function exception, and she has neither sought leave to amend the Second Amended Complaint to cure

the pleading deficiencies nor contended that she is able to cure the pleading deficiencies.

### d.    The End of the Line

The posture of this case then is that the Second Amended Complaint, as it stands, is subject to dismissal under Rule 12(b)(1).  No circumstances exist that would warrant granting Ms. Willett a further opportunity to amend.  The bottom line is that there are no allegations in the operative complaint that satisfy Ms. Willett's burden to "plead[ ] facts that facially allege matters outside of the discretionary function exception," *Spotts*, 613 F.3d at 568, and there is no request to amend the Second Amended Complaint to cure the jurisdictional pleading deficiencies.  The court is compelled to conclude that Ms. Willett has pleaded all she knows, and it is not enough.  This is the end of the line for the Second Amended Complaint, and Rule 12(b)(1) dismissal also is appropriate.

### 2.    *Whether CAVHCS Knew or Should Have Known of Prior Sexual Assaults on Patients Allegedly Committed by Mr. Chappell*

The analysis turns to the Rule 12(b)(6) inquiry, which provides an alternative basis for dismissal.  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22

(11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555; *see also Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010) ("A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Applying the pleading standards established in *Twombly* and *Iqbal*, the court finds the allegations pertaining to CAVHCS's knowledge of prior sexual assaults on patients allegedly committed by Mr. Chappell lack the requisite factual support for surviving a Rule 12(b)(6) motion. Relevant to CAVHCS's knowledge, the Second Amended Complaint begins and ends with allegations that Mr. Chappell had "previously sexually molested patients" and that the chief executive of CAVHCS

24

"clearly knew, or should have known, about Mr. Chappell's tendency to sexually modest [sic] innocent people." (2d Am. Compl. ¶ 9.)   The Second Amended Complaint provides no facts about the prior sexual assaults, when they occurred, or who the victims were.   It likewise provides no facts about how any CAVHCS employee, including Dr. Robinson, was in a position to know about the assaults or the basis upon which any CAVHCS employee should have known about the prior sexual assaults.   Moreover, allegations that Dr. Robinson "knew, or should have known," absent some factual elaboration, are conclusory and insufficient to satisfy *Twombly*'s pleading threshold.   *See Iqbal*, 556 U.S. at 678 (One of the "working principles" underlying *Twombly* is "that the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." (citing *Twombly*, 550 U.S. at 555)); *cf. Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (The complaint's allegations in support of a 42 U.S.C. § 1983 claim that the defendants "knew or should have known" of a risk "merely recited an element of a claim without providing the facts from which one could draw such a conclusion" and should have been disregarded for purposes of *Twombly*'s analysis.).   Based on these reasons, the Second Amended Complaint fails to allege a claim upon which relief can be granted.[14]   Rule 12(b)(6) dismissal, thus, is appropriate.

---

[14] This ruling amounts to reconsideration of the court's prior finding. (*See* Doc. # 36, at 12); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (explaining the district court's broad discretion to reconsider an interlocutory order).

## IV.  CONCLUSION

Dismissal is required under Rule 12(b)(1) on the basis of the discretionary-function exception to the FTCA's waiver of the United States's sovereign immunity and, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Accordingly, it is ORDERED that the United States's renewed motion to dismiss (Doc. # 41) is GRANTED.

A separate judgment will be entered.

DONE this 3rd day of June, 2014.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE